Francis J. Donovan, J.
In this summary proceeding for nonpayment of rent, tenant moves to dismiss on the ground that the landlord has not alleged and proven that the rent does not exceed the maximum rent under the Economic Stabilization Act and the executive orders promulgated pursuant to that act.
The parties agreed that the prior rent was to be paid during the “ freeze ” period of August to November, 1971. The issue here presented is the increased rent which petitioner demands and which has not been paid for the months subsequent to November, 1971.
The major question is one of policy and law, namely: What should this court do with respect to the implementation of the rent control regulation recently issued pursuant to presidential executive order?
This in turn presents subsidiary questions involving fair dealing and expeditious adjudication such as: What should be required of a landlord before he is entitled to the aid of this court in collecting a rent increase? What can or should this court do in a case where a landlord is demanding a rental which is illegal as to amount?
Despite the fact that a lower court should not be quick to make declarations of unconstitutionality, we would be remiss if we avoided the question completely. Canon 3 of the Canons of Judicial Ethics provides:
“ Constitutional Obligations. It is the duty of all judges in the United States to support the federal Constitution and that of the state whose laws they administer; in so doing, they should fearlessly observe and apply fundamental limitations and guarantees.”
For the most part, deferring to higher courts in such matters merely amounts to deciding which side shall bear the burden of the appeal to be taken from the lower court decision. In some cases it may mean that the limited resources of the loser preclude any appeal.
The action taken by Congress and the President in the Economic Stabilization Act (P. L. 91-379, 84 U. S. Stat. 796) and the executive orders numbered 11615 and 11627 are, together, an attempt to give the President and the various councils, and committees complete control of the national economy. The *60 action transcends the constitutional power over interstate commerce. Here, it is invoked to control the purely intra-State matter of the rental of a residential apartment.
Such a broad grasp of total economic control was attempted in 1933, a time of severe economic crisis, under the National Industrial Recovery Act. That act was stricken because it exceeded the constitutional limits in Schechter Corp. v. United States (295 U. S. 495).
The words of Chief Justice Hughes in the aforesaid case at page 528 merit quotation. He said:
“We are told that the provision of the statute authorizing the adoption of codes must be viewed in the light of the grave national crisis with which Congress was confronted. Undoubtedly, the conditions to which power is addressed are always to be considered when the exercise of power is challenged. Extraordinary conditions may call for extraordinary remedies. But the argument necessarily stops short of an attempt to justify action which lies outside the sphere of constitutional authority. Extraordinary conditions do not create or enlarge constitutional power. ’ ’
It may be true that the economic state of the Nation is as stated by C. Jackson Grayson Jr., Chairman of the Price Commission:
“Essentially, it’s the feeling of individuals in this nation that we can’t control ourselves any more. That the ‘ whole thing ’ has escaped us. That the individual is powerless against the collective, whether it’s big business, big labor or big goverhment. ”
“ As a result, he concluded, most people do not want to abandon controls. Quite the contrary, most are saying, ‘ Control us ’. This comes not only from the average citizen, it comes from labor and business.” (N. Y. Times, April 28, 1972, p. 29.)
As Chief Justice Hughes said, this extraordinary economic condition does not create or enlarge constitutional power.
Price control was sustained in Yakus v. United States (321 U. S. 414) as a wartime emergency measure. The court said (pp. 431-432): “In considering these asserted hardships, it is appropriate to take into account the purposes of the Act and the circumstances attending its enactment and application as a war-time emergency measure. The Act was adopted January 30, 1942, shortly after our declaration of war against Germany and Japan, when it was common knowledge, as is emphasized by the legislative history of the Act, that there was grave danger of wartime inflation and the disorganization of our economy from excessive price rises.”
*61 The hostilities which have been pursued these past many years in Southeast Asia may well have contributed to the Nation’s economic plight but Congress never declared war. There are therefore no special war powers available to sustain control over purely intra-State transactions and Yakus would seem inapplicable.
Control and regulation of prices, rents, wages and profits may be required, now and in the future, in order to ameliorate the harsh and disruptive effects of our competitive system. Social justice can hardly be achieved where raw power dictates the norm. But the remedy should not be sought by decrees in violation of our fundamental laws. If law is to yield to expediency in the highest echelons of government how can we hope for peace and order elsewhere in the land?
If the national economy must be controlled effectively, and Congress and the President require additional power, it should frankly be sought by constitutional amendment.
Whether it be the waging of war or the regulation of the economy, the judiciary should, by appropriate expression, require the legislative and executive branches of government to conform to the constitutional mandates.
Returning to the case at bar, we find it unnecessary and impractical for a landlord to allege and prove that the rental does not exceed the maximum rent fixed under the executive orders. In most cases no specific rent has been fixed. The method is to fix general standards depending, in large measure, on voluntary adherence in the first instance. A complaint of alleged violation will be referred to the Internal Revenue Service for investigation. Determination letters by the Internal Revenue Service may be appealed to the Price Commission and the latter’s rulings may be appealed to a United States District Court. (Economic Stabilization Regulations, § 300.613 et seq.)
To require landlords to allege and prove that the rent is not greater than the maximum permitted by Federal regulation would require an I. R. S. determination in each case. A ruling is only a “ guideline.” (§ 300.613.) The issuance of a determination letter is discretionary (§ 300.613 [d], subd. 3 and § 300.613 [e]).
This procedure lacks the precision and certitude necessary for the prompt adjudication of summary proceedings for the nonpayment of rent.
It is the opinion of this court that a routine requirement in all nonpayment cases of allegation and proof that the rent is not in excess of the maximum would be impractical and unfair.
*62 If a case is presented warranting such action, this court might stay the eviction proceeding pursuant to section 212 of the Uniform District Court Act pending determination by the appropriate Federal court or agency. (Matter of MacLeod v. Shapiro, 20 A D 2d 424; Matter of Silver-Ruth Inc. v. Rafferty, 42 Misc 2d 926.)
Such a stay is discretionary, and should be granted only when required in the interests of justice.
In the light of the serious question of constitutionality, and the fact that the rent increase in this case, from $180 on a lease from 1969 to 1971 to a rental of $200 commencing October 1, 1971 is not shocking or patently exorbitant, no such stay will be granted.
Since we are not giving effect to any determination under the Economic Stabilization Act, it is unnecessary to ultimately determine the question of its constitutionality. That issue may, for the moment, be left to determination by other courts.
The intent of this extended opinion is threefold:
1. To call attention to the advisability of close attention to constitutional limitations in establishing procedures involving governmental compulsion.
2. To discourage the dilatory interposing of routine objections predicated on nonexistent violations of price guidelines.
3. To suggest a procedural method (Uniform District Ct. Act, § 212) for implementing valid Federal regulations in meritorious cases.
Judgment on the petition in favor of the landlord. Settle form of judgment on two days ’ notice and include order staying execution for 10 days to permit payment of rent.